## Atchison, T. & S. F. R. R. Co. v. The Goetz & Brada Manufacturing Co.

1. VARIANCE—*Pleading and Proof—Explanation of Terms Used.*—In an action against a railroad company to recover damages on freight, the plaintiff filed a declaration, stating a contract for the shipment of 161,690 pounds of angle iron, bar iron, tie iron, frames and plate iron punched, rod iron, rough iron, castings, bolts and boiler rivets, from Chicago to San Jose, California. Upon the trial the plaintiff introduced bills of lading, one being for the shipment of " gas reservoir material," another for the shipment of gas reservoir material, plate iron, punched angle bar, rods and plate iron, castings and rivets in kegs, and a third for gas reservoir material slate. These were objected to as not admissible under the declaration. *It was held,* that without explanation, they would not have been admissible, but that the plaintiff was entitled to show that the articles described in the declaration, were " gas reservoir material," and so known by manufacturers, shippers and carriers of freight.

2. CONTRACTS—*Construction.*—A court will admit evidence for the purpose of " placing itself in the shoes of the parties," to enable it to read the contract in the light and surroundings under which it was executed.

3. PARTIES.—The right of a person to sue in his own name, upon a simple unsealed contract made with him, although in form running to another party, is beyond dispute.

4. RAILROAD COMPANIES—*Right to Make Freight Tariffs—Agent's Construction.*—A railroad company has a right to make freight tariffs and to designate thereon articles as it sees fit, but it has no right to repudiate the construction its agent, for the purpose of procuring a shipment, has placed upon its tariff, in respect to such shipment.

5. INTERSTATE COMMERCE — *Falsely Described Goods.*—The term "falsely described" in the " Interstate Commerce Act," does not mean a mere incorrect description. The pains and penalties of the law are not intended for those who, in good faith, incorrectly describe or bill goods.

6. PARTIES—*Consignor and Consignee.*—Where there exists an express agreement with the consignor, he, as being the person with whom the contract is made, must be the plaintiff in an action against the carrier. The consignor is the person who actually consigns the goods, not necessarily the person in whose name a bill of lading is made.

7. BILLS OF LADING—*No Shipment, no Contract.*—A bill of lading, if there is no shipment, does not constitute a contract.

**Memorandum.**—Assumpsit. In the Superior Court of Cook County; the Hon. JONAS HUTCHINSON, Judge, presiding. Declaration to recover alleged over-charges exacted on freight; plea of non-assumpsit; trial by

152     APPELLATE COURTS OF ILLINOIS.

VOL. 51.]    A., T. & S. F. R. R. Co. v. Goetz & Brada Mfg. Co.

jury; verdict and judgment for plaintiff; appeal by defendant. Heard in this court at the March term, 1893, and affirmed. Opinion filed August 4, 1893.

### STATEMENT OF THE CASE.

The Goetz & Brada Manufacturing Company in February, 1891, desired to ship to the San Francisco Brewers, at San Jose, California, a quantity of angle iron, bar iron, tie iron, frames and plate iron punched, rod iron, rough iron castings, bolts and boiler rivets, which were designed to be put together at San Jose, and used in the construction of floors in a malt house and certain steep tanks. The goods were being furnished by The Goetz & Brada Manufacturing Company to the brewing company, f. o. b. at San Jose, and the freight therefor was to be paid by Goetz & Brada. They desired to obtain the lowest freight possible, and for this purpose applied to various agents for rates. Mr. George H. Stanton, the contracting freight agent of the appellant, called upon Mr. Goetz, the president of the appellee company, for the purpose of making a freight rate on this material. There were two tariff sheets; one, called the " Western Classification," and the other, the " Special Commodity Tariff." The latter gave lower rates on certain articles than were given by the general western classification. The goods which appellee desired to ship were not specifically listed, either in the Special Commodity Tariff or in the Western Classification rate-book. Under these circumstances, it was the duty of the railroad company to receive the freight of appellee and make a rate of shipment thereon. Mr. Stanton, for that purpose, examined the Special Commodity Tariff rate-book, and decided upon a rate of $1.15 per hundred pounds from Chicago to San Jose. He also instructed appellee to bill the goods as " gas-reservoir material," stating that they were the same kind of goods as gas-reservoir material, and could come under that head. Appellee used the term " gas reservoir material" in billing these goods, in accordance with the directions of Mr. Stanton. Mr. Stanton knew, however, that the goods were to be used in the construction of a malt-house plant, and were not to be used in the con-

A., T. & S. F. R. R. Co. v. Goetz & Brada Mfg. Co.

struction of a gas reservoir.    The bills of lading were issued by appellant, describing the goods as gas reservoir material, and also as consisting of other material not included in the Special Commodity rate-book as gas reservoir material, and in the bill of lading guaranteed the freight rate of $1.15 per hundred pounds to San Jose.    Upon the arrival of the goods at San Jose, an inspector of the Transcontinental Association inspected the goods, rated them as machinery, and the railroad company charged and collected from the brewing company a rate of $1.90 per hundred pounds.    This was charged to appellee, paid by it, and suit brought to recover the overcharge.

APPELLANT'S BRIEF, EDGAR A. BANCROFT AND GEO. R. PECK. ATTORNEYS.

Appellant contended for a reversal of the judgment because of a variance in the description of the shipment, citing Randolph v. Onstott, 58 Ill. 52; Burnap v. Cook, 32 Ill. 169; Harms v. McCormick, 132 Ill. 104; Wise v. Twiss, Admr., 54 Ill. 301; Trunkey v. Hedstrom, 131 Ill. 205; and because of a variance in the name of the shipper, citing Chitty on Pleading, Vol. 1, p. 3; Newcomb v. Clark, 1 Denio 226.

A bill of lading is to be taken as the sole evidence of the final agreement of the parties by which their duties and liabilities must be regulated, and parol evidence is inadmissible to vary its terms or legal import.    Louisville & N. R. R. Co. v. Fulgham, 91 Ala. 555; 8 So. Rep. 803; Hinckley v. N. Y. C. & H. R. Co., 56 N. Y. 429; Hutchinson on Carriers, Sec. 126.

An agreed rate can not be proved by parol, even where no rate is named in the bill of lading.    Louisville, E. & St. L. R. Co. v. Wilson, 119 Ind. 352.

Nor can agreed rebates be recovered against the expressed terms of the bill of lading.    Hopkins v. St. L. & S. F. R. Co., 29 Kan. 544.

Nor can the agreed route be proved by parol, even though no route is specified in the bill of lading.    Snow v. I. B. & W. Ry. Co., 109 Ind. 422; The Sidonian, 34 Fed. Rep. 805,

154    APPELLATE COURTS OF ILLINOIS.

VOL. 51.]    A., T. & S. F. R. R. Co. v. Goetz & Brada Mfg. Co.

806; Ledne v. Ward, L. R., 20 Q. B. Div. 475, 482; The Delaware, 14 Wall. 579, 600, 604; White v. Ashton, 51 N. Y. 280, 284.

It is a rule without exception that parol evidence is not admissible to vary the terms of a written contract. All oral negotiations respecting the terms and conditions upon which the goods are received and are to be carried, are conclusively presumed to be merged in the bill of lading. This must be taken as the final depository and sole evidence of the agreement between the parties. Snow v. I. B. & W. R. Co., *supra;* Long v. N. Y. C. R. Co., 50 N. Y. 76, 78; Hill v. Syracuse R. Co., 73 N. Y. 351, 353; O'Bryan v. Kinney, 74 Mo. 125.

APPELLEE'S BRIEF, RUBENS & MOTT, ATTORNEYS.

The pleadings in this case were correct. The declaration sets forth that appellant agreed to carry for appellee certain material, describing the same according to the actual description of that material. The description, "gas reservoir material," as contained in the bill of lading, was open to explanation by parol evidence. The character, quality and quantity of goods described in a bill of lading, can always be shown to be different by parol evidence. Bissel v. Price, 16 Ill. 408; Great Western Railroad Co. v. McDonald, 18 Ill. 172; Wallace v. Long, 8 Brad. 504; Illinois C. Railroad Co. v. Cobb, 72 Ill. 148.

MR. JUSTICE WATERMAN DELIVERED THE OPINION OF THE COURT.

In this action, brought to recover alleged overcharges exacted on freight shipped by appellee, the plaintiff filed a declaration, stating a contract for, and the shipment of 161,690 pounds of angle iron, bar iron, tie iron, frames and plate iron punched, rod iron, rough iron, castings, bolts and boiler rivets, from Chicago to San Jose, California, at the rate of $1.15 per hundred pounds, but that the defendants at San Jose, before it would deliver the same, exacted from the plaintiff the rate of $1.90 per hundred pounds.

Upon the trial the plaintiff introduced bills of lading, one being for the shipment of " gas reservoir material," another for the shipment of gas reservoir material, plate iron, punched angle bars, rods and plate iron, castings and rivets in kegs, and a third for gas reservoir material plate; the rate specified therein being $1.15 per hundred pounds. These were objected to as not admissible under the declaration.

Without explanation they would not have been admissible. The plaintiff was entitled to show that the articles described in the declaration were gas reservoir material, and so known by manufacturers, shippers, and carriers of freight. It was not necessary to describe the articles or state in the declaration the contract in the exact language used in making it. Shore v. Wilson, 9 Cl. & F. 555; Wharton on Ev., Sec. 938, 961.

It seems that the articles described in the declaration 'and which were actually shipped, were such materials as are used in the construction of gas reservoirs, and would have been so classed had they been designed for such use, but being intended for a malt house, they were by the railroad agent at San Jose, classed as "machinery;" not that they were machinery, but that they, in his judgment, came under the rate known as the machinery class.

In consequence of the rulings of the trial court upon the objection made to the introduction of the bills of lading, the plaintiff, during the trial, obtained leave, and after verdict amended its declaration by alleging that " the said material was by plaintiff, at the advice and instructions of the defendant, billed as gas reservoir material, and the bills of lading described said material as gas reservoir material, and said material was accepted by said defendant company as gas reservoir material, with a full knowledge on the part of said defendant of the character of said material and the purpose for which the same was designed to be used."

Under this amendment the plaintiff proved that Mr. Stanton, as contracting agent of the Santa Fe Road, examined the material and said that it was virtually the same as that described in defendant's tariff sheet as gas reservoir mate-

156　　APPELLATE COURTS OF ILLINOIS.

VOL. 51.]　A., T. & S. F. R. R. Co. v. Goetz & Brada Mfg. Co.

rial, and instructed plaintiff to bill it as gas reservoir material.

The defendant objected to the admission of this evidence as an attempt to vary the terms of a written contract, by a conversation had prior to it. We do not so regard the testimony. Its effect was not to vary the terms of a written contract, but merely to enable the court to understand it. It is a familiar rule, that a court will admit evidence for the purpose of placing itself in the shoes of the parties, to enable it to read the contract in the light and surroundings under which it was executed. Wharton on Evidence, Secs. 940, 961, 972; Gray v. Sharp, 1 Myl. & K. 602; Taylor on Ev., Sec. 1082; Myers v. Walker, 24 Ill. 133; Thorington v. Smith, 8 Wal. 1. Neither the average judge or juror would, without explanation, know what was meant by the expression, " gas reservoir material."

Whether the articles actually shipped were correctly described as such material, or whether by such description the parties meant to describe the articles actually shipped, were controverted questions as to which it was proper the court should hear evidence. Appellant's witness, Mr. Rich, offered as an expert, testified that for the articles shipped, if designed and adapted for the construction of a malt house, there was in the tariff, no classification at that time.

One of the bills of lading was in the name of the Plamondon Manufacturing Company; it is insisted that this bill was for this reason inadmissible. From the bill of lading describing the Plamondon Company as the shipper, it appeared that it was in fact given in pursuance of an arrangement made with appellee for the shipment of its goods, and, under it, the goods of appellee and some of the Plamondon Company were shipped, appellee paying the entire freight. Appellee called upon the Plamondon Company to refund the freight it paid for said company at $1.90 per hundred.

This action was brought to recover the alleged overpayment on freight on appellee's property, not for any overpayment on property of the Plamondon Company. The right of appellee to sue in its own name, upon a simple

unsealed contract made with it, although in form running to another party, is beyond dispute. Chitty on Pleading, Vol. 1, p. 4, 9th Am. Ed., from 6th London Ed.; Dicey on Parties, p. 97, Rule 11.

There were introduced in evidence two tariff sheets, of which plaintiff had in its office, one. The rate for machinery, as published in these, was $1.90 per hundred. Gas reservoir material—consisting of beams, columns, circular frames for top pulleys, weights, and chains for same, plate iron, punched—was rated at $1.15 per hundred pounds. Angle and channel iron and steel beams, bar or rod iron, billets and blooms, boiler and plate iron, punched bolts and nuts, carriage or wagon, in boxes or kegs, machine, bridge and lag, and lag screw bolts or nuts, rivets in boxes or kegs, were rated at $1.15 per hundred.

Upon one of these sheets was printed the following rules :

"14. Property Misrepresented. — When articles are shipped under a false name, in order to deceive the carrier or to avoid this tariff, agents at destination will collect charges according to a proper classification, and in case of loss or damage, consignees will be paid for the articles as called or shipped. Rates named in bills of lading on property misrepresented or wrongly described are illegal, and will not be protected."

"16. Rates on Commodities.—Rates on commodities specified on pages 10 to 59, inclusive, are specific and must not be applied to analogous articles."

"When rate for car-load lots is not named, the rate which is given will govern, regardless of quantity, and no two or more articles having a car-load rate shall be shipped in mixed car-loads at the car-load rate, unless so provided."

Appellant contends that the freight on articles shipped is fixed by these tariffs, and that as the articles actually shipped were not designed for a gas reservoir, but for a malt house, they are to be treated as coming under the machinery class, and rated at $1.90. These tariffs, one of which embraces fifty-nine pages, are susceptible of construction, and not in

158     APPELLATE COURTS OF ILLINOIS.

VOL. 51.]    A., T. & S. F. R. R. Co. v. Goetz & Brada Mfg. Co.

all cases, necessarily, easily understood. The agent of appellant when soliciting this consignment looked them over and construed them as fixing the rate on the material now under consideration at $1.15, saying it was, virtually, gas reservoir material. Acting upon this construction appellee shipped by appellant's line and billed the goods as directed by its agent.

Appellant now repudiates the act of its agent, and says that the goods were incorrectly billed. In this controversy it seems to us that at the least, appellee was entitled to show the circumstances under which the goods were shipped and billed, and to ask the jury to say what, under the circumstances, for the purposes of this contract of shipment, the goods are to be considered to be.

Appellant has a right to make freight tariffs, and to thereon designate articles as it sees fit, but the right to repudiate the construction its agent, for the purpose of procuring a shipment, has placed upon its tariff, is, in respect to such shipment, quite another thing.

The railroad agent at San Jose who examined the articles now under consideration, says that knowing that the Malt House Company contemplated erecting an electric plant, he suspected fraud, and made a thorough examination of the shipment, and that it consisted of the machinery and fittings for a malt house plant; what he considered to be machinery is shown by his further answer that he should rate as machinery angle iron, frames, pieces of plate iron, iron doors, bundles of bar iron, bundles of galvanized iron, bar iron frames, bundles of punched iron, wrought iron bars, iron castings, plates of boiler iron, bolts, bundles of iron castings, boiler iron plates, bars of angle iron, bundles of sheet iron, bundles of bolts, a tool box, bars of flat iron, bar iron, iron frames, if prepared to be fastened together and used in the construction of a malt house, and fitted ready to be put together, after being put together comprising a part of a malt house plant.

Appellant contends that appellee, in violation of the interstate commerce act, falsely described its property for the

purpose of getting a low rate; this is a grave charge, and if true, ought to entitle appellant to a reversal of the judgment in this case; appellant also says that its " unscrupulous and unfaithful agent, with whom appellee connived" confessedly had nothing to do with receiving the goods or making the contract.    We do not understand the record of this cause as justifying these charges.

The evidence upon this point is  that Mr. Goetz, the president of the appellee company, had conversation with soliciting agents of different freight roads, among others, with a Mr. Stanton, representing the freight department of appellant; that Mr. Stanton gave his card as contracting freight agent of appellant, and the conversation before alluded to was had with this Mr. Stanton when the goods were ready to ship, a day or two before the bills of lading were made.

The goods were not delivered to Stanton, nor were the bills of lading received from him, nor does his name appear thereon.    A written description of the goods was sent to appellant's local freight agent at Chicago, which description was " two car loads gas reservoir material, consisting of plate iron, punched, angle bars, rods and plate iron castings and rivets in kegs."

There is nothing to show any " connivance" of appellee with an unfaithful agent of appellant.    Nor is there anything to show that Mr. Stanton, appellant's agent, was unfaithful.

He was not called as a witness, and at the utmost it can only be said by appellant that he was mistaken.

Information given in good faith by appellee of the character of the goods to a contracting freight agent of appellant was sufficient.    There is nothing tending to show bad faith upon the part of appellee, and we therefore do not perceive wherein the describing of these goods as gas reservoir material, etc., was a violation of the interstate commerce act.

Appellant's agents seem to place their statements that they were not thus correctly described, largely upon the

160    APPELLATE COURTS OF ILLINOIS.

VOL. 51.]    A., T. & S. F. R. R. Co. v. Goetz & Brada Mfg. Co.

fact that they were not intended for such use, and counsel for appellant, in effect, urge that appellant may discriminate in respect to its freight charges in favor of a particular use to which property, carried, is to be applied; that the trouble, expense, labor, responsibility and in all respects the carriage being the same, more may be exacted for the transportation of the same goods when designed for a malt house than when intended for a gas reservoir; as to the bearing of the interstate commerce act upon such discrimination, we are not called upon to express any opinion.

Appellant urges that the jury was improperly instructed; but, after summarizing the instructions given at the instance of the plaintiff, say that "For the defendant the court with marked impartiality gave instructions nearly if not the exact opposite of these; but refused, however, to instruct according to the plain facts of the case, that the plaintiff could not recover on a contract to carry gas reservoir material by proving a refusal to carry portions of a malt house plant." As we have already indicated, we do not think that under the evidence this case turns upon whether the material carried was designed for a gas reservoir or for a malt house. No complaint is made of the amount of the verdict. We are of opinion that the jury, under the evidence, having arrived at the conclusion which the law points out, whether they were in all respects properly instructed is comparatively unimportant, and that the judgment of the Superior Court should be affirmed.

OPINION ON REHEARING.

It is not, as counsel for appellant in a petition for rehearing seem to think, the opinion of this court that evidence is admissible to show what the secret intention or meaning of parties to a contract was. But the court will, in construing the contract, place itself in the shoes of the parties, in order that it may read the contract from their standpoint; and it will hear evidence as to the significance of technical or local expressions. So doing the court below permitted the following testimony to be given:

" Q.   How did you come to bill this as gas reservoir material for shipment ?

(Objection ; overruled ; exception.)

. A.   We were so instructed by Mr. Stanton, contracting agent of the Santa Fe road, after going through all that material ; it was right on the place to be shipped, and he said under their tariff sheet it is the only head it can come under, because it is the same material described in their own tariff sheet as gas reservoir material, and could not find any other head in their tariff sheet, so he instructed us to bill it as gas reservoir material, because there was no other material included in that lot that would not be classified as gas reservoir material, although it was not used as a gas reservoir, no more than a boiler is different from a water-tank; although a water-tank is not a boiler, the material is the same."

This testimony was undisputed.  It thus appears that appellee wrote the words " gas reservoir material," under direction of the agent of the appellant, as proper words to describe the articles actually shipped.

To arrive at the intent, not of one, but of all the contracting parties, is always the object of the court; not a secret intent of one, but what each knew was meant and intended that the words used should express.

It is the case that the witnesses who testified that the articles shipped came under the general description of gas reservoir material and were substantially the same as gas reservoir material, did not specifically testify that the articles were so known in any business ; but they were business men accustomed to deal in such material, and their competency to speak upon this matter does not seem to have been questioned.   The real question in this regard was not whether such expression correctly described the shipment, but what did each of the parties intend and mean by such expression.   About this there was no doubt and no dispute.

Appellant does not deny having made the alleged contract of shipment, but it insists that it is not bound thereby because it alleges that the goods were " falsely described."

162    APPELLATE COURTS OF ILLINOIS.

VOL. 51.]   A., T. & S. F. R. R. Co. v. Goetz & Brada Mfg. Co.

The goods were not " falsely described." That expression in the bills of lading and in the " Interstate Commerce Act" does not mean a merely incorrect description. The pains and penalties of the law are not intended for those who in good faith incorrectly describe or bill goods. In this case in the utmost good faith appellee billed these articles as " gas reservoir material." Such billing was made in pursuance of instructions given them by appellant; when the shipment was at an end another agent of appellant decided that the consignment was incorrectly, or, as appellant contends, falsely billed; this was a thing which, as against appellee, he had no power to do.

Counsel for appellant urge that the record does not show that appellee consulted other railroad companies concerning the shipment. The original brief of the same counsel contains the following: " When the goods were ready for shipment, Mr. Goetz, after consultations with various freight men, decided to send them by the appellant line." The record shows that Mr. Goetz testified that prior to shipping the goods, he had conversations with several soliciting agents of different roads, among others with Mr. Stanton, the agent of appellant.

If, as contended by appellant, the contract it made is void, then the rate would be such as should under the tariff have been made.

We see no warrant for rating the articles shipped as machinery; while we do find that most, if not all of such articles, if described separately as steel and iron angle and channel beams, columns and girders, bar or rod iron, boiler iron, plate, punched, bolts and rivets, would, under the transcontinental tariff, have been rated at $1.15, the amount appellant and appellee agreed to.

Counsel again urge that only the consignor named in a bill of lading can bring suit thereon; and cite from Dicey on Parties, the rule that " When there exists an express agreement with the consignor, he, as being the person with whom the contract is made, must be the plaintiff in an action against the carrier."

The rule is correctly stated.   The consignor is the person who actually consigns the goods; not necessarily the person in whose name a bill of lading is made.

A bill of lading, if there be no shipment, does not constitute a contract; a bill of lading without consideration therefor, is a mere piece of paper; there must, to constitute a contract, be a consideration as well as parties.   The whole subject is admirably treated in Dicey on Parties, at page 97, following rule 11.

The application for a rehearing will be denied.