McGREW COAL COMPANY v. MISSOURI PACIFIC RAILWAY COMPANY, Appellant.

In Banc, January 26, 1920.

1. **CONSTITUTIONAL LAW**: Freight Charges: Long and Short Hauls. The statute forbidding a railroad to charge a larger rate for shipping coal a given distance within this State than it charges for a shipment a greater distance within the State, and penalizing the company for the excess, is violative of neither the State nor Federal Constitution.

2. **FREIGHT CHARGES**: Paid by Consignee: Recovery by Shipper of Overcharge. The shipper of coal, instead of quoting a price f. o. b. cars at point of shipment, quoted a price delivered at the consignee's station, which quotation was made up of the price at the point of shipment plus the freight rate charged by the railroad. When the coal was received by the consignee, he paid the railroad agent the

freight charges and forwarded a receipted bill to the shipper, who credited the consignee on the coal bill for the amount thereof, and then the consignee paid to the shipper the difference between the freight charges and the quoted price for the coal. Thus the higher the freight charges the less the shipper received for the coal. The freight charges were in excess of charges for intrastate shipments a longer distance on the defendant's railroad, and were violative of the statute. *Held*, that the shipper, in contemplation of law, was injured by the exaction of the illegal overcharge, and may maintain an action to recover it back. The remedy for the overcharge, to be effective, must lie with the shipper, and the amount of the recovery is measured by the amount he is, either directly or through his consignee, forced to pay.

3. ———: **Long and Short Haul: Amount of Recovery: Liquidated.** The long-and-short haul provision of the Missouri Constitution is self enforcing, and liquidates the amount of the overcharge at the difference between the charge exacted and paid for the shorter haul and the rate charged for the longer haul, and that difference is necessarily the amount to be recovered back.

Appeal from Lafayette Circuit Court.—*Hon. Samuel Davis,* Judge.

AFFIRMED.

*Edward J. White, James F. Green* and *Harvey C. Clark* for appellant.

(1.) Under the stipulation introduced by the plaintiff, the freight on each shipment mentioned in the petition was paid by the consignee and not by the plaintiff. Any damages sustained by reason of any overcharge on such shipments was sustained by the consignee, who paid the freight, and not by the plaintiff, and respondent is not the proper party to complain. International Coal Co. v. Railroad, 230 U. S. 184; Hoover v. Railway Company, 156 Pa. St. 220; Sharpless v. Lawrence, 213 Fed. 427; Homestead Co. v. Electric Co., 226 Fed. 53; Lehigh Valley Railroad v. American Hay Co., 219 Fed. 541; Railroad Co. v. Spiller, 242 Fed. 1; Kirkpatrick v. Railroad Co., 86 Mo. 341. (2.) Before plaintiff can recover in this case it must show that it has been damaged by the acts of the appellant. Cases supra. (3) Statutes are read and construed

in the light of the common law.  Johnson v. Fluetsch, 176 Mo. 452;  6 Am. & Eng. Enc. Law (2 Ed.), p. 270; Cooley's Constitutional Limitations (7 Ed.), p. 94. (4)  Common carriers were allowed to make reasonable and just discriminations at the common law.  4 Elliott on Railroads, secs. 1467, 1565, 1676;  17 Am. & Eng. Enc. Law (2 Ed.), p. 135;  2 Hutchinson on Carriers (3 Ed.), secs. 521, 588, 589;  Railroad Commissioners v. Weld, 73 S. W. 529.  (5) Secs. 3173 and 3211, R. S. 1909, enacted by the Legislature of 1872, are unconstitutional and void as the act containing said sections was not passed in accordance with Sec. 32, Art. 4, Constitution of 1865.  State ex rel. Hixon v. Lafayette Court, 41 Mo. 39;  State v. Presinger, 76 Mo. 346;  State v. Great Western Coffee and Tea Co., 171 Mo. 634;  City of Kansas v. Payne, 71 Mo. 159;  State ex rel. v. Baker, 129 Mo. 482;  Witzman v. S. Ry. Co., 131 Mo. 612; Shively v. Langford, 174 Mo. 535;  Dart v. Bagley, 110 Mo. 42.  (6) The fact that the Act of 1872, or Sections 3173 and 3211, have been brought forward in the various revisions, gives them no added force or validity;  said sections are void just as they were void when first enacted by the Legislature in 1872.  Brannock v. Railway, 200 Mo. 561;  Paddock v. Railroad, 155 Mo. 524.  (7) The General Assembly by adopting the statute of a sister state, adopts the construction which has been given that statute by such state.  State ex rel. v. Macon County Court, 41 Mo. 453;  Northcut v. Edgar, 132 Mo. 265;  Burnside v. Want, 170 Mo. 531.  (8) The Legislature has no power to arbitrarily say that all discriminations by railroads, regardless of conditions and circumstances, are unlawful.  Sloan v. Pac. Railroad, 61 Mo. 24;  Chicago & Alton Ry. Co. v. People, 67 Ill. 11; 2 Hutchinson Carrier (3 Ed.), sec. 588;  Abbott v. Lendenvower, 42 Mo. 162.  (9) A statute revising the whole subject-matter of a former statute and evidently intended as a substitute for it, although it contains no expressed words to that effect, repeals the former. Laws 1887 (Extra Session), p. 15;  State v. Roller, 77 Mo. 120;  Yall v. Gillham, 187 Mo. 393;  Mariwether v.

Love, 167 Mo. 514; Delaney v. Police Court, 167 Mo. 667; State ex rel. v. Patterson, 229 Mo. 364; Sutherland on Statutory Construction (2 Ed.), sec. 247. (10) A statute is repealed by implication if there is a positive repugnancy between the new law and the old, so that they cannot stand together or be consistently reconciled. Pac. Railroad Co. v. Cass Co., 53 Mo. 17. (11) A construction of the Constitution should not be adopted which renders meaningless any of its provisions. State ex rel. v. Hostetter, 137 Mo. 636; Cooley's Constitutional Limitations (7 Ed.), pp. 91, 92. (12) The test of whether or not a constitutional provision is self-enforcing is whether its language is addressed to the General Assembly or to the courts. If its language indicates that it was intended as a present enactment, complete in itself as definite legislation, it is addressed to the courts and is self-enforcing; but if it contemplates subsequent legislation to carry it into effect, it is addressed to the General Assembly, and is not self-enforcing. State ex rel. v. Gibson, 195 Mo. 251. (13) Sec. 3173, R. S. 1909, and Section 12, Article 12, Constitution of Missouri 1875, are in violation of the 14th Amendment of the Constitution of the United States. Cooley's Constitutional Limitations (7 Ed.), pp. 500 to 520; 2 Elliott on Railroads, sec. 686; 2 Hutchinson Carrier (3 Ed.), sec. 574; State of Neb. ex rel. v. Sioux City & O. W. R. Co., 31 L. R. A. 47; Ragan v. Farmers Loan and Trust Co., 154 U. S. 1014; Chicago, M. & St. P. Railroad v. State of Minn., 134 U. S. 970; State v. Aims, 169 U. S. 819.

*Krauthoff, McClintock & Quant* for respondent.

(1) The right of the McGrew Coal Company to recover of defendant an excess rate, being a greater rate of freight for a shorter haul than defendant charged another for a longer haul, stands adjudicated. McGrew v. Mo. Pac. Ry. Co., 230 Mo. 496; McGrew v. Mo. Pac. Ry. Co., 258 Mo. 23; McGrew v. Mo. Pac. Ry. Co., 177 Mo. 533; Cohn v. St. L., I. M. & S. Ry. Co.,

181 Mo. 30; McGrew v. Mo. Pac. Ry. Co., 118 Mo. App. 379. The questions presented have all been considered heretofore with great care and at great length and consistently have been decided against appellant. McGrew Coal Co. v. Mo. Pac. Ry. Co., 178 S. W. 1179; affirmed, Mo. Pac. Ry. Co. v. McGrew, 244 U. S. 191. (2) Plaintiff quoted a price for coal per ton delivered at point of destination. The carrier exacted of the consignee an illegal freight rate. The consignor reimbursed the consignee for the excess charged. The carrier received money to which the carrier was not entitled. Who owns this money? This constitutional provision is self-enforcing. McGrew v. Mo. Pac. Railroad Co., 230 Mo. 496, 546; Mo. Pac. Ry. Co. v. McGrew, 244 U. S. 191. The Constitution declares unlawful the charging of the excessive rate. Where the doing of a thing is declared unlawful, a right arising out of the unlawful act may be enforced in any appropriate form of action. McGrew v. Mo. Pac. Ry. Co., 230 Mo. 547, 549. In the case of an excessive freight rate "the legal injury is suffered by the person who pays for the carriage." Watkins on Shippers & Carriers, p. 344, sec. 213; Nicola v. Railroad Co., 14 Interstate Comm. Rep., pp. 199, 209; Sondheimer Co. v. Railroad, 20 I. C. C. 607; Lamb, McGregor & Co. v. Railroad, 20 I. C. C. 358; Deming Lumber Co. v. Southern Pacific, 24 I. C. C. 599; Darnell-Taenzer Lumber Co. v. Southern Pacific Co., 221 Fed. 890, 245 U. S. 531; Georgia Railroad & Banking Co. v. Crossley, 128 Ga. 35; Service & Wright Lumber Co. v. Railway Co., 67 Ore. 63; Davis v. Mobile & O. Ry. Co., 194 Fed. 376; Andalman v. Ry. Co., 153 Ill. App. 169. (3) "A person liable for and who has paid for a loss or injury caused by fault of another is subrogated to the rights of the injured party against the wrongdoer." 37 Cyc. 394; Lumberman's Mut. Ins. Co. v. Railroad Co., 149 Mo. 177; Loewenstein v. Ins. Co., 227 Mo. 116; Hartford Fire Ins. Co. v. Wabash Ry. Co., 74 Mo. App. 112; Holland Banking Co. v. See, 146 Mo. App. 275; The Jersey City, 43 Fed. 166, 167; Mobile Ry. Co. v. Jurey, 111 U. S. 594. (4) The

law is a part of every contract. Plaintiffs made a contract with defendant to carry coal. The law fixed the rate. This made the rate a part of the contract. Defendant violated the contract. Plaintiff as consignor has a right to sue for the breach of a contract to which it is a party. Atchison v. Chicago Ry. Co., 80 Mo. 213; Ross v. Ry. Co., 119 Mo. App. 294; Gratiot Street Warehouse Co. v. M., K. & T., 124 Mo. App. 564; Steamship Co. v. Railroads, 144 Mo. App. 53; Bennett v. Railroad, 151 Mo. App. 298; Reynolds v. C. & A., 85 Mo. 90; Vanbuskirk v. Railroad, 131 Mo. App. 563; Clubb v. Railroad Co., 136 Mo. App. 4; Barr v. Railroad Co., 181 Mo. App. 91. Either a consignor or a consignee may sue for a breach of the contract of shipment. Henry Bromschwig Tailor's T. Co. v. M., K. & T., 147 S. W. 174. (5) As between a consignor and a consignee, the consignor is the trustee of an express trust. R. S. 1909, sec. 730; Wolfe v. Mo. Pac. Ry. Co., 97 Mo. 478; Gratiot Street Warehouse Co. v. Railway Co., 124 Mo. App. 565; Snider v. Adams Express Co., 77 Mo. 523; 3 Hutchinson on Carriers (3 Ed.), sec. 1309. An action may be brought by the trustee of an express trust. Harney v. Dutcher, 15 Mo. 89; Chouteau v. Boughton, 100 Mo. 411; Ellis v. Harrison, 104 Mo. 277; Beck v. Haas, 111 Mo. 271; Glenn v. Hunt, 120 Mo. 342; Stilwell v. Glasscock, 47 Mo. App. 557; Rothwell v. Skinker, 84 Mo. App. 176; Geer v. Zinc Co., 126 Mo. App. 177.

BROWN, C.—This petition, filed in the Circuit Court of Lafayette County, Missouri, returnable to the February term, 1915, contains fifty-two counts. Each count is based upon alleged illegal charges on shipment of coal from Myrick, Missouri, to some other station on the line of defendant's railroad in the State of Missouri. All the counts are identical except as to dates, amount of coal shipped, the rate charged, the destination and the comparative rate charged by the defendant for shipment between the points mentioned.

The first count is, omitting titles and signatures, as follows:

"Plaintiff avers that in April, 1908, it was and still is a coal mining company incorporated under the law of the State of Missouri.

"Plaintiff for first cause of action avers that in October, 1879, the defendant was, and has ever since been, a railroad corporation, duly organized under the law of said State and a common carrier for hire of freight and passengers between its station hereinafter named in said State. That within five years last past, and on the dates hereinafter named in Exhibit No. 1, plaintiff produced and sold bituminous coal from its mines near Myrick, one of defendant's stations in said county, and that on the various dates named in Exhibit No. 1, and in the cars therein described by number and initial, he shipped, by defendant's road, from said Myrick, in the aggregate 640,400 pounds of his said coal in car-load lots to the consignees named in said exhibit at Blackwater, another station on defendant's road in said State.

"Plaintiff avers that for the said carriage of said coal defendant fixed, charged, demanded and received of the plaintiff 65 cents per ton, an illegal freight rate, being 25 cents per ton more than defendant was by law entitled to fix, demand, charge and receive, in this, that during all said times and dates herein named defendant had fixed, charged, demanded and received for the carriage of the same class of coal over its said line and over another part of its said road from its station of Waverly, and to another of its said stations, viz., Kansas City, in said State, a distance of 63.84 miles, 40 cents per ton by the car load, while the distance from said Myrick to said Blackwater was only 60.62 miles, for which said rate of 65 cents per ton for said carriage was fixed, charged, demanded and received of plaintiff as aforesaid, and the same was illegal and exceeded the amount the defendant was entitled to fix, charge, demand and receive for said shipments by the sum of $80.05.

"And the plaintiff avers that it is damaged and aggrieved by reason of said illegal freight charge in the sum of $80.05. Wherefore, he prays judgment for the same and for said damages not exceeding $1,000 and for all other and general relief according to the statute in such case made and provided."

The answer admitted that defendant was a corporation and owned and operated the lines of railway mentioned in the petition, on which it was a common carrier of freight and passengers, and denied generally the other allegations of the petition. It also pleaded specially the unconstitutionality of certain statutes on which it assumed the petition was formed. Issue was joined on all these pleas by demurrer and replication.

The cause was submitted to the court on the pleadings and the following stipulation:

"It is hereby stipulated between the parties that the defendant's station, the rates charged by the defendant, and amount of coal transported and the distance set out in the several counts of the petition are correctly stated therein.

"It is further stipulated that in this case the plaintiff in quoting the price of said coal to the several consignees named in the exhibits herein, instead of quoting f. o. b. at Myrick, quoted a price delivered to the consignee's stations, which quotation was based upon the price at Myrick plus the freight rate charged by the defendant; when the coal was received by the consignees such consignee paid defendant's agent the freight charges and forwarded the receipted freight bill to the plaintiff, to be credited on the price of said coal as part payment therefor, and then such consignee paid the plaintiff the difference between such freight bill and the quotation price.

"It is further stipulated that such coal was delivered by the plaintiff to the defendant for shipment in the usual and ordinary way without any direction or request by plaintiff as to what particular trains the same must be transported in, and that the defendant received and transported the same in the usual, ordinary

course of business, on the usual train passing over defendant's road.

"It is further agreed that the trains in which the defendant hauled said cars of coal contained other cars and shipments consigned from points within this State to points without the same, from points without the same to points within this State, and from points from without this State through this State to points in other states."

Judgment was rendered for the plaintiff on each count of the petition, aggregating the total sum of $14,308.77, from which this appeal is taken.

I.    The statement filed by the appellant in pursuance of the terms of Section 280, Revised Statutes 1909, and the rules of this court made in pursuance thereof, closes with a clear and concise presentation of the issues as follows:

Constitutional Statute.

"It is conceded that the rates charged, the distances between the different points and the amount of coal shipped, are as stated by the plaintiff, and the issues of law before this court are:

"1.   Whether the plaintiff paid the freight on the several shipments and was in fact damaged as alleged in its petition and is the proper party to bring this action.

"2.   Whether, regardless of who in fact paid the freight, the respondent has been damaged and is therefore entitled to recover.

"3.   Whether the sections of the statute on which this action is based are constitutional.

"The latter proposition has been decided adversely to the contention of the appellant by this court in prior actions between the same parties, but the question as to whether or not plaintiff can recover for damages, if any, sustained by the consignee who in fact paid the freight, has never been passed upon by this court."

Notwithstanding this frank declaration the appellant has favored us with an elaborate brief upon the constitutional questions raised in the trial of the case

which are the same in all respects as those involved in
the following cases: McGrew v. Missouri Pacific Rail-
way Company, 177 Mo. 533; Ib v. Ib, 230 Mo. 496; Ib
v. Ib, 258 Mo. 23; and McGrew Coal Company v. Ib,
178 S. W. 1179. In each of these the questions were
raised by similar pleadings and were presented to the
court for determination in the same manner in which
they are raised and presented here. They were all
against this appellant and in the last case cited this
respondent corporation was the plaintiff and we dis-
posed of it in our opinion with the statement that "the
questions presented have all been considered heretofore
with great care and at great length, and consistently
have been decided against appellant," who is also the
appellant in this case. That case was taken by writ of
error to the Supreme Court of the United States, where
the rights claimed by appellant under the Constitution
of the United States were adjudged against it and our
judgment affirmed. [Missouri Pacific Railway Com-
pany v. McGrew Coal Co., 244 U. S. 191.] For these
reasons we must take the appellant at its word, and
consider only the unadjudicated question.

II. Has the plaintiff, in contemplation of law, been
injured by the exaction of the illegal charge? If so,
may he maintain this suit to recover it back? This de-
pends upon the stipulation upon which the case was
submitted.

The stipulation stated that the plaintiff, instead of
quoting to his customer a price for the coal f. o. b. at
Myrick, quoted a price delivered at its destination. This
means that the coal was sold to the consignee f. o. b. at
the station of destination. When the coal was delivered
the purchaser paid the illegal freight bill and settled his
account with the plaintiff by sending him the defend-
ant's receipt for the amount of freight paid, with the
balance in cash. The transaction of sale stated in the
stipulation was a simple one. According to its terms
the less the purchaser of the coal paid for freight the
more the plaintiff received in net proceeds from the

transaction. The more he paid for freight the less the plaintiff received for his coal.

The stipulation states that plaintiff's quotation to the purchaser "was based upon the price at Myrick plus the freight rate charged by the defendant." This is probably true. The value of all commodities is based on all the conditions of cost, including transportation. When the consignee of this coal sold some or all of it to his customer, he no doubt based the price upon the cost of the coal in his yard including the illegal charge paid to the defendant, but this would not transfer the right to bring the suit for the overcharge. We cannot see that the plaintiff stands on any different footing from that upon which it would stand had it paid the freight in advance. While it would, no doubt, then take it into consideration as an element in the selling price of his commodity, that fact would have no effect upon the liability of defendant for the illegal exaction.

This litigation illustrates the just and salutary operation of the rule. The defendant had the physical power to enforce its illegal claim by withholding the delivery. The right of each consumer upon whom the burden ultimately falls to pursue the tortuous course of litigation which has resulted from these transactions would be a barren one. The remedy, to be effective, must lie with the shipper with whom the contract is made, and the amount of the recovery measured by the amount which he is, either directly or through his consignee, forced to pay. This conclusion is well supported by the authorities. [Southern Pacific Co. v. Darnell-Taenzer Lumber Co., 245 U. S. 531, 221 Fed. 890; Burgess v. Freight Bureau, 13 I. C. C. 668, 680; Jennison Bros. v. Dixon, 133 Minn. 268; Service Lumber Co. v. Railway Co., 67 Ore. 63, 76; Railroad Co. v. Manufacturing Co., 51 Ill. App. 151; Andalman v. Railway, 153 Ill. App. 169; Railroad Co. v. Crossley, 128 Ga. 35.]

In the foregoing cases, as well as in many others which they cite, this very point is discussed and expressly determined. We call attention to the Georgia case,

because it presents the question in a striking light. The rate charged, collected from the consignee, and charged to the consignor, who paid it, was not an illegal rate, nor so far as appears, an unreasonable one. It was simply in excess of a rate made by agreement between the consignor and carrier, and of course liquidated the amount of the excess.

The appellant cites Railroad v. Coal Mining Company, 230 U. S. 184, to sustain its position in this case. In disposing of that case in its application to this we can do no better than to quote from the opinion of the same court upon the same subject in Southern Pacific Co. v. Darnell-Taenzer Co., 245 U. S. 1. c. 534, as follows:

"The cases like Pennsylvania R. R. Co. v. International Coal Mining Co., 230 U. S. 184, where a party that has paid only the reasonable rate sues upon a discrimination because some other has paid less, are not like the present. There the damage depends upon remoter considerations. But here the plaintiffs have paid cash out of pocket that should not have been required of them, and there is no question as to the amount of the proximate loss. See Meeker v. Lehigh Valley R. R. Co., 236 U. S. 412, 429; Mills v. Lehigh Valley R. R. Co., 238 U. S. 273."

We have expressly held the long-and-short-haul provision of Section 12 of Article 12 of the State Constitution to be self-enforcing. [McGrew v. Railroad, 230 Mo. 496; Ib v. Ib, 258 Mo. 23; McGrew Coal Co. v. Ib, 178 S. W. 1179.] It liquidates the amount of the overcharge at the difference between the charge exacted and paid for the shorter haul and the rate charged for the longer haul. If it is wrongfully exacted and paid, it is necessarily the amount to be recovered back. The judgment in this case was rendered accordingly, and is affirmed. *Walker C. J.* and *Williams, Blair* and *Williamson, JJ.,* concur; *Goode* and *Woodson, JJ.,* dissent; *Graves, J.,* not sitting.