McGREW COAL COMPANY v. ANDREW W. MELLON, Federal Agent under Transportation Act of 1920, Appellant.

Court en Banc, October 8, 1926.

**1. RAILROADS: Long and Short Hauls: Act of 1872: Repealed by Act of 1887.** The Act of 1872 (Laws 1871-72, pp. 69 and 70; Sec. 9974, R. S. 1919), declaring that no railroad corporation shall directly or indirectly charge or collect for the transportation of goods any greater amount than is charged and collected for the transportation of similar quantities of the same class of goods over a greater distance on the same road, or charge different rates for receiving and delivering freight at different points on its road, or charge or collect, for the transportation of goods over any portion of its road, a greater amount as compensation than shall be charged or collected by it for the transportation of similar quantities of the same class of goods over any other portion of its road of equal distance, was narrowed and repealed by the Act of 1887 (Sec. 4, Laws 1887, Ex. Sess., p. 17; Sec. 9986, R. S. 1919), declaring that it shall be unlawful for any common carrier to charge or receive any greater compensation in the aggregate for the transportation of like kinds of property under similar circumstances and conditions for a shorter than a longer distance over the same line in the same direction.   [Overruling McGrew v. Railroad, 177 Mo. 533, and McGrew v. Railroad, 230 Mo. 496.]

**2. ——: ——: Discrimination.** The common law did not make unlawful mere unjust discriminations between localities, but did make unlawful such discriminations between individual shippers, and the manifest purpose of

the Act of 1872 was to make it unlawful for railroads to discriminate unjustly between localities. The Act of 1887 took up the same subject, and defined what should thereafter constitute unjust discrimination between localities and made such unlawful, and it is manifest that the act was intended to occupy the entire field and to exhaust the subject, and it in effect repealed the discrimination between individual shippers prohibited by the Act of 1872, by declaring that it should no longer be unlawful for a railroad to charge more for a short haul than for a long haul of the same quantity and class of goods, if the two hauls were in different directions and made under different circumstances and conditions. And said Act of 1887 was intended to be a compliance with Sections 12 and 14 of Article 12 of the Constitution of 1875, and was an appropriate legislative expression of such compliance.

3. ———: ———: **Rates: Public Utilities Act: Discrimination.** The Public Service Utilities Act (Laws 1913, p. 583, sec. 47; Sec. 10456, R. S. 1919) invested the Public Service Commission with power to determine, after a hearing, the rates, fares or charges to be exacted, charged or collected by any railroad for the transportation of persons or property in this State, and left to the Commission the entire subject and field of rate regulation, including unjust discrimination and other abuses, unfettered by the Act of 1872 or the Act of 1887 or any other prior legislative enactments, and therefore the Act of 1872 was not a valid law when alleged discriminatory charges were made in 1918 and later years.

4. ———: ———: **Constitutional Regulations: Self-Enforcing: Common Law Remedy.** Section 12 of Article 12 of the Constitution, declaring that "it shall not be lawful for any railway company to charge for freight or passengers a greater amount, for the transportation of the same, for a less distance than the amount charged for any greater distance; and suitable laws shall be passed by the General Assembly to enforce this provision," is not self-enforcing. It cannot be ruled that it created a cause of action for a greater freight charge for a short than for a long haul, without regard to direction, circumstances or conditions, and left to the General Assembly only the duty to enact a suitable law providing a remedy or penalty, and if the General Assembly failed in that respect, the common-law supplied a remedy. The clause requiring the General Assembly to enact a suitable law to enforce the provision necessarily attached itself to the preceding clause, and restricted the remedy to a suitable statute. [Overruling McGrew v. Railroad, 230 Mo. 496, and subsequent cases following it.]

Corpus Juris-Cyc. References: **Carriers**, 10 C. J., Section 654, p. 422, n. 10 New; Section 775, p. 489, n. 67. **Constitutional Law**, 12 C. J., Section 106, p. 729, n. 48; Section 107, p. 730, n. 55; Section 109, p. 731, n. 64, 71. **Inclusio Unius Est Exclusio Alterius**, 31 C. J., p. 396, n. 95.

Appeal from Lafayette Circuit Court.—*Hon. Robert M. Reynolds*, Judge.

R̲e̲v̲e̲r̲s̲e̲d̲.

*Edw. J. White, W. W. Graves, Jr., E. M. Tipton* and *James F. Green* for appellant; *Alex M. Bull* of counsel.

(1)　The Legislature has no power to arbitrarily declare the discrimination by railroads unlawful, without regard to condition or circumstances. Sloan v. Railroad, 61 Mo. 24; C. & A. Railroad v.

People, 67 Ill. 11; Abbott v. Lindenbower, 42 Mo. 162. (2) Sec. 9974, R. S. 1919, and Section 12, Article XII, of Constitution of 1875, are in violation of the Fourteenth Amendment to the Constitution of the United States. 2 Elliott on Railroads, sec. 86; State ex rel. v. Railroad, 31 L. R. A. 47; Regan v. Loan Co.,. 154 U. S. 1014; Railroad v. Minnesota, 134 U. S. 970. (3) Plaintiff's claim has been denied by the Interstate Commerce Commission and should also be denied by this court. McGrew Coal Co. v. Dir. Gen., 85 I. C. C. Rep. 735.

*Edwin A. Krauthoff* for respondent.

(1) Neither the statutes nor the constitutional provision cited are in conflict with the Fourteenth Amendment of the Constitution of the United States. McGrew v. Mo. Pac. Ry. Co., 230 Mo. 496, 258 Mo. 23, 244 U. S. 191, 280 Mo. 466, 256 U. S. 134. See, also—McGrew v. Mo. Pac. Ry. Co., 177 Mo. 533; Mo. So. Railroad Co. v. Pub. Serv. Comm., 279 Mo. 491. (2) Where plaintiff shipped coal f. o. b. destination and the consignee paid the excessive rate, and was thereafter reimbursed by the consignor, the consignor was the party entitled to recover. McGrew v. Mo. Pac. Ry. Co., 280 Mo. 466, 13 A. L. R. 283, 256 U. S. 134; Cobb v. Joyce-Watkins Co., 287 Mo. 47. (3) The contention that the carrier must charge and collect the tariff rates, though illegal is predicated of a provision in the Interstate Commerce Act, and self-evidently does not apply to intrastate rates. 1 Drinker on Interstate Commerce, secs. 229, 240, 244. The Missouri Public Service Commission cannot "by its order impart validity to a rate which is prohibited by the Constitution and laws of this State." Independent Breweries Co. v. St. Louis Ry. Co., 4 Mo. P. S. C. 623. And the filing of a tariff does not justify a violation of the law. "It is elementary that if the rate named in a contract is unlawful, a common carrier cannot justify such unlawful charge because a shipper has agreed to pay it." Mooney v. Mo. So. Railroad Co., 5 Mo. P. S. C. 257. The Commission "had no authority to authorize violations of the positive law." McGrew v. Mo. Pac. Ry. Co., 118 Mo. App. 383. (4) The Missouri constitutional provision makes it unlawful for a railroad corporation to "charge" the prescribed rate (Art. 12, sec. 12). So that, instead of the tariff rates violative of the law being a defense, they constitute the cause of action. "The record shows, we think, that the carrier violated the statute [the Interstate Commerce Act], by publishing the lower rate for the longer haul without permission . . ." Davis v. Portland Seed Co., 264 U. S. 424; Seawell v. Ry. Co., 119 Mo. 243; Cohn v. Ry. Co., 181 Mo. 44; California Adjustment Co. v. Ry. Co., 179 Cal. 153. It need not be shown that "the carrier actually charged or received

the lower rate for the longer haul  . . .   the published lower tariff for the longer haul does so show." McCaull-Dinsmore Co. v. Great Northern Ry. Co., 154 Minn. 28; Beeghly v. Public Utilities Comm., 104 Oh. St. 165. The constitutional inhibition against the charging of the greater rate for the shorter haul (Art. 12, sec. 12) of course controls the Missouri Public Service Commission and the tariffs filed with that body. Mo. So. Ry. Co. v. Pub. Serv. Comm., 279 Mo. 489; In re Fourth-Class Rates, 4 Mo. P. S. C. 552; Independent Breweries v. St. Louis Ry. Co., 4 Mo. P. S. C. 625; Mooney v. Mo. So. Railroad Co., 5 Mo. P. S. C. 257, 279 Mo. 487. (5) Defendant asks the court to reconsider the former McGrew cases. "Where, as here, counsel for appellants insistently reiterate a single ground of invalidity, which, after repeated presentations has failed to convincingly impress the court, the time-worn maxim embedded in the law since the time of Littleton, that 'it is the concern of the public that there should be an end of litigation' may be appropriately applied. A careful survey of the present contention as to the invalidity of the statute adds no reason not heretofore submitted. What we held good in the beginning may therefore be held good in the end, for appellant's contention can derive no strength from iteration in the absence of reason." State ex rel. v. Imel, 280 Mo. 558. "In view of these repeated adjudications, can there be any merit in this appeal? If there is, we fail to appreciate it." Dickey v. Holmes, 208 Mo. 672. The practice of raising constitutional questions previously decided by this court has been denounced as "intolerable." Carpenter v. Hamilton, 185 Mo. 609. Constitutional questions passed on by the Supreme Court in former cases are no longer open. State v. Campbell, 214 Mo. 362; State v. Wild, 190 S. W. 273; State v. Evertz, 190 S. W. 287; State v. Campbell, 259 S. W. 430. "A constitutional question once decided is no longer open for consideration unless it appears to the court that its opinion is radically wrong." State ex rel. v. Imel, 280 Mo. 559. (6) Constitutional prohibitions are self-enforcing. State ex rel. v. Gordon, 251 Mo. 309; McGrew v. Paving Co., 247 Mo. 564; State ex inf. v. Kansas City, 233 Mo. 186. Likewise as to constitutional mandates. State ex rel. v. Warner, 197 Mo. 650. (7) In addition, it appears that Sections 1 and 4 of the Act of 1872, now Secs. 9974, 9998, R. S. 1919, were re-enacted in 1879 as a part of a revised bill relating to railroads. See unreported opinion of VALLIANT J., in the McGrew case, 230 Mo. 496, 582. So that, even if invalid as originally passed, it is entirely valid as passed in 1879. And the Legislature did enforce the Constitution of 1875 by enacting the revision of 1879. R. S. 1879, secs. 820, 822. No attack is made in this case in any manner as to the validity or sufficiency of the legislation had in 1879. The re-enactment of a statute adopts a construction thereof. Schawacker v. McLaughlin, 139 Mo. 341; State v. Schenk, 238 Mo. 453; Camp v. Railroad Co., 94 Mo.

App. 281.    (8)    The contention of the defendant that the Missouri constitutional and statutory provisions in issue in this case are in violation of the Fourteenth Amendment to the Constitution of the United States has been denied by the Supreme Court of the United States.    Mo. Pac. Ry.    Co. v. McGrew Coal Co., 244 U. S. 191, 256 U. S. 134.

BLAIR, C. J.—This is an action to recover alleged excessive freight charges for the transportation of coal between January 1, 1918, and March 4, 1920, from the mines of respondent at Myrick, Missouri, to various stations in this State on the railroad lines of the Missouri Pacific Railroad Company.    Respondent had judgment below for $18,730.99, and an appeal was granted to this court.

The action was originally brought against Walker D. Hines, Director General of Railroads.    James C. Davis, acting as Federal Agent, appointed under the Transportation Act of 1920, was substituted as appellant before the case was argued and submitted in this court.    On May 12, 1926, Andrew W. Mellon, the successor of James C. Davis, upon a stipulation filed in this court, was substituted as appellant in the same official capacity.

The petition contained 168 counts, each count being based upon a separate shipment.    Counts 41 and 95 were dismissed, and judgment was entered upon the remaining counts. The petition alleged the incorporation in Missouri of the McGrew Coal Company and that said corporation is and was engaged in the coal mining business in Lafayette County, Missouri, and further alleged the official position of Walker D. Hines as Director General of Railroads and that he was in charge of and operating the Missouri Pacific Railroad Company. The numerous counts or causes of action are alike except as to dates of shipments, amounts of coal shipped, rates charged, destinations of shipments and comparative rates charged between other points on said railroad.

In the first count it was alleged that, on December 28, 1917, plaintiff shipped 354,600 pounds of bituminous coal over the lines of the Missouri Pacific Railroad Company from Myrick to Archie, both in Missouri, and that the Director General charged and collected from the consignee ninety cents per ton by the carload, when said Director General at the time collected for the same class of coal and over the same railroad the rate of sixty cents per ton by the carload from Liberal, Missouri, to Granby, Missouri, a greater distance than from Myrick to Archie.

It was further alleged that plaintiff sold the coal so shipped at an agreed price, delivered free on board cars at destination, and that consignee paid the freight charges thereon at plaintiff's request and was reimbursed therefor by plaintiff.    The judgment prayed for in

said count was $53.19, together with interest and costs.  The freight charges involved in this case were all collected from respondent within the period of Federal control during and following the World War.

Without going further into the pleadings, it suffices to say that appellant has made a number of defenses, some of which, due to questions arising out of Federal control and operation of railroads, were not made and could not have been made in prior cases between respondent and appellant or appellant's predecessor, the Missouri Pacific Railway Company.

Among the defenses now made is the defense made in prior cases that Section 12, Article XII, of the Constitution of 1875, is not self-enforcing and that the General Assembly has not passed suitable laws to enforce said constitutional provision.  In spite of the former adverse decisions on the question by this court, appellant now earnestly asks us again to consider such defense.

The contention is that our former decisions, and particularly McGrew v. Railroad, 230 Mo. 496, were not soundly ruled.  The particular decision referred to was written by Hon. Willard P. Hall, who was called to sit with the Court en Banc as special judge.  That case will be referred to as the Hall decision, in order to distinguish it from cases appearing in other volumes of our reports bearing practically the same title.

The statute construed in the Hall decision will be referred to as the 1872 Act.  That statute was enacted by the 26th General Assembly and was approved April 1, 1872, and may be found at pages 69 and 70 of the 1871-72 Session Acts.  Section 1 of that Act was carried into subsequent revisions and successively became Section 820, Revised Statutes 1879, Section 2629, Revised Statutes 1889, Section 1126, Revised Statutes 1899, Section 3173, Revised Statutes 1909, and appears in the 1919 revision as Section 9974.  The words "at the same," indicated by parentheses below, do not appear in the 1879 and subsequent revisions.  With this explanation we quote said act as it now appears as Section 9974, Revised Statutes 1919:

"No railroad corporation organized or doing business in this State, under any act of incorporation or general law of this State, now in force or which may be hereafter enacted, shall directly or indirectly charge or collect, for the transportation of goods, merchandise or property on its said road for any distance, any larger or greater amount, as toll or compensation, than is (at the same) charged or collected for the transportation of similar quantities of the same class of goods, merchandise or property over a greater distance upon the same road, nor shall such corporation charge different rates for receiving, handling or delivering freight at different points on its road or roads connected therewith, which it has a right to use, nor shall any such railroad corporation charge or collect, for the trans-

portation of goods, merchandise or property over any portion of its road, a greater amount as toll or compensation than shall be charged or collected by it for the transportation of similar quantities of the same class of goods, merchandise or property over any other portion of its road of equal distance; and all such rules, regulations or by-laws of any railroad corporation as fix, prescribe or establish any greater toll or compensation than is hereinbefore prescribed are hereby declared to be void."

The constitutional provision upon which the Hall decision was bottomed is Section 12, Article XII, of our present Constitution, and reads as follows:

"It shall not be lawful in this State for any railway company to charge for freight or passengers a greater amount, for the transportation of the same, for a less distance than the amount charged for any greater distance; and suitable laws shall be passed by the General Assembly to enforce this provision; but excursion and commutation tickets may be issued at special rates."

Judge Hall held that the Act of 1872 (Sec. 9974, R. S. 1919) is valid against the assault that the body of the act is broader than its title, as prohibited by Section 32, Article IV, of the Constitution of 1865, which was in force when said act was passed and provided that "no law enacted by the General Assembly shall relate to more than one subject, and that shall be expressed in the title."

He held that the 1872 Act was still in force, notwithstanding the prior decision of this court in Sloan v. Pacific Railroad Co., 61 Mo. 24, declaring said act invalid as against the Pacific Railroad, because of a provision in its charter granted by the General Assembly authorizing it to fix its own rates for the transportation of freight, and notwithstanding what was said in that case concerning invasion by the Legislature of the province of the courts to determine whether or not a given rate or alleged discrimination was in fact unjust and unreasonable.

Following McGrew v. Railroad, 177 Mo. 533. Judge HALL further held that the 1872 Act was not repealed by the Act of 1887 (Sec. 9986, R. S. 1919). Judge HALL held that the 1872 Act did not become unconstitutional upon the adoption of Section 14, Article XII, of the 1875 Constitution, and that Section 12, Article XII, construed as prohibiting the charging of a greater rate for a short haul than for a longer haul in any direction and under any and all circumstances and conditions is not in conflict with said Section 14, Article XII, commanding the General Assembly to pass laws against unjust discriminations.

He further held that, even if the 1872 Act was not constitutional and was not in full force and effect for any reason, Section 12, Article XII, of the 1875 Constitution is self-enforcing and that no leg-

islation was required to enable a shipper to recover for overcharges therein declared to be unlawful.

Judge HALL also held that Section 12, Article XII, construed as self-enforcing, is not in conflict with Section 1 of Article V, or Section 1 of the Fourteenth Amendment, of the United States Constitution, which sections provide that neither the Federal Government nor any State shall deprive any person of life, liberty or property without due process of law.

Such are the questions we are now asked to consider again. Appellant has raised several other questions which it will be necessary to consider, if we now adhere to the conclusions reached in Judge HALL's able and exhaustive opinion.

It is apparent that the judgment in this case cannot be sustained unless either Section 12, Article XII, of the 1875 Constitution is self-enforcing, or the 1872 Act is now in force. It is not contended that the charges made violated any other constitutional or legislative provision.

Assuming, for the purposes of this opinion, that the Act of 1872 was constitutionally passed (appellant contends it was not), or, if it was not, assuming that it became a living and valid law by reason of the revision act of 1879, as respondent contends, we are nevertheless persuaded that the Hall decision and the case of McGrew v. Railway Company, 177 Mo. 433, which Judge Hall followed, incorrectly held that the 1887 Act did not repeal the 1872 Act by implication.

So far as it is important here, Section 4 of Laws of 1887 (Extra Sess.), page 17 (now Sec. 9986, R. S. 1919), reads as follows:

"It shall be unlawful for any such common carrier to charge or receive any greater compensation in the aggregate for the transportation of like kinds of property under similar circumstances and conditions for a shorter than a longer distance over the same line in the same direction."

Judge GANTT wrote the opinion in the 177th Missouri. He held that the two acts were intended to apply to different conditions; that the 1872 Act had for its object the regulation of freight charges in any direction on and over any part of the same road, regardless of circumstances or conditions, whereas the 1887 Act is limited to shipments in the same direction under similar circumstances and conditions and that both can readily stand together.

Such conclusion convicts the Thirty-fourth General Assembly of wasting its time doing a silly and useless thing. That is, that the Legislature, knowing that the 1872 Act already made unlawful the charging of a greater amount for the transportation of goods of the same class and quantity over a shorter distance than is charged for a greater distance and knowing that said act applied regardless of circumstances or conditions, passed the 1887 Act making such charges

unlawful where the transportation was under similar circumstances and conditions and for a shorter than for a longer haul over the same line and in the same direction, and yet intended that the 1872 Act, covering everything in Section 4 of the 1887 Act and more, should remain in full force and effect. It is difficult to conceive of busy and sensible legislators wasting their time in enacting such fruitless legislation.

Suppose that a statute made it a misdemeanor for *any* person to wear silk hose and that, without amending or expressly repealing such statute, a subsequent Legislature passed a law making it a misdemeanor for any *male* person to wear silk hose. Would not any woman of ordinary intelligence, knowing about both statutes, have concluded that she could safely wear silk hose?

It would seem axiomatic that the 1872 Act could not be in conflict with the 1887 Act without the 1887 Act being in conflict with the 1872 Act. Under the maxim *inclusio uniun est exclusio alterius*, it was not unlawful, under the 1887 Act, for a railroad to charge more for a short haul than for a longer haul, if the two hauls were in different directions and the circumstances and conditions thereof were not the same. But, if such a statute as the 1872 Act had been passed after the 1887 Act, such a charge would at once have become unlawful. Conflict would immediately arise between said 1887 Act and such supposed subsequent act which would work the repeal of the 1887 Act by implication. By supposing the 1887 Act and the 1872 Act transposed as to point of time of enactment, conflict clearly appears. Any reasoning employed to demonstrate that there is no such conflict must be regarded as specious rather than sound.

It was correctly pointed out by Judge HALL that the common law did not make unlawful mere unjust discriminations between localities, although it made such discriminations between individual shippers unlawful. The manifest purpose of the 1872 Act was to make it unlawful for railroads to discriminate unjustly between localities. The law then enacted expressed the prevailing legislative notion of what constituted unjust discrimination.

In 1887 the General Assembly took up the same subject in connection with a complete scheme "to regulate railroad corporations," as was expressed in the title. [Laws 1887, p. 15.] It defined what should thereafter constitute unjust discrimination between localities and made same unlawful. It is evident that each General Assembly enacted a law which was intended by it to occupy the entire field and to exhaust the subject. The only reasonable conclusion is that the 1887 Legislature did not intend that it should any longer be unlawful for a railroad to charge more for a short haul than for a longer haul of the same quantity and class of goods, if the two hauls were in different directions and were made under substantially different

circumstances and conditions.  The Act of 1887 was evidently intend-
ed as compliance with the mandates of the 1875 Constitution, which
compliance had been long delayed.  Said act is largely devoted to
the character of legislation contemplated by Sections 12 and 14 of
Article XII, and at least expressed the legislative idea of appro-
priate, if not full, compliance therewith.

However, if the foregoing considerations may fairly be said to
leave any doubt that the 1872 Act is no longer in force, what doubt
can possibly remain since the passage in 1913 of the Public Service
Commission Act?  Section 47, Laws of 1913, page 583 (now Sec.
10456, R. S. 1919), provides in substance that when the Commission
shall be of opinion after a hearing that the rates, fares or charges de-
manded, exacted, charged or collected by any railroad for the trans-
portation of persons or property in this State are, among other things,
"unjustly discriminatory," the Commission shall determine the just
and reasonable rates, fares and charges to be thereafter observed
and in force.  No logical conclusion can be reached, other than that
it was the intention of the Forty-seventh General Assembly there-
after to leave to the Commission the entire subject and field of rate
regulation, including unjust discriminations and other abuses, with-
out the Commission being in anywise bound by previous legislative
enactments upon the subject which had not been expressly repealed.
If this is the correct view, and we doubt not that it is, then the 1872
Act, even though not repealed by implication by the 1887 Act, and
the 1887 Act as well, were swept into the discard and were repealed
by necessary implication by the enactment of the Public Service
Commission Act.

As Judge GANTT's and Judge HALL's decisions were both written
before 1913, the 1872 Act was then unaffected by the Public Service
Commission Act.  We have not specially noticed the Hall decision in
so far as it held that the 1872 Act was not repealed by the 1887 Act.
His decision was largely based upon and followed Judge GANTT's
opinion.

We hold that the 1872 Act was not a valid and existing law when
the charges were made which are involved in this action.  The cor-
rectness of the judgment below therefore depends solely upon the
soundness of Judge Hall's conclusion that Section 12, Article XII,
of the 1875 Constitution is self-enforcing and in itself made the al-
leged excessive charges unlawful and gave the shipper a cause of
action therefor without the aid of "suitable laws."  This we will
next consider.

The conclusion that said section of the Constitution is self-enforc-
ing can only be reached by holding that the clause "suitable laws
shall be passed by the General Assembly to enforce this provision"
has no application to the right of action for an overcharge made

in violation of said section and applies only to remedies in addition to those afforded by the common law. Such seems to be the conclusion reached in the Hall decision. Judge HALL concluded that said section made unlawful and created a cause of action for any charge of a greater toll for a less than for a longer haul, without regard to direction, circumstances or conditions and that all the General Assembly was commanded to do was to pass suitable laws to provide the remedy or penalty and, if the General Assembly failed to pass such suitable laws, redress could be had under the remedies or actions available under the common law to collect such overcharge. In other words, he construed Section 12, Article XII, as if it read: It shall not be lawful in this State for any railway company to charge for freight or passengers a greater amount, for the transportation of the same, for a less distance than the amount charged for any greater distance; and a right of action is hereby created in favor of the person so overcharged which shall be enforceable under existing common law remedies and suitable laws shall be passed by the General Assembly to provide remedies, in addition to those already afforded by the common law, more effectually to enforce such right.

But such construction scarcely seems permissible under the plain language of the proviso of said section. Such proviso necessarily attaches to everything contained in the section. It relates to the right created, as well as to the remedy to enforce same.

Judge HALL relies upon Householder v. Kansas City, 83 Mo. 488. Section 21 of Article II of the 1875 Constitution was there up for construction. Said section forbade the taking or damaging of private property for public use without just compensation. It thereby created a right as does Section 12, Article XII, in that portion of the section preceding the clause directing the passage of suitable laws to enforce it. But in Section 21, Article II, the direction for the passage of laws by the General Assembly was specifically limited to the method of ascertaining the damages. In Section 12, Article XII, the constitutional mandate is directed to the passage of laws applicable to the entire section under the words "suitable laws shall be passed by the General Assembly to enforce this provision," and the duty was put upon the Legislature not only to provide an efficacious remedy, but also to enact laws to enforce the right itself. No room remains for the construction that such right could be enforced by remedies other than those to be provided by the General Assembly under the constitutional mandate.

There can be no question that constitutional provisions, creating a right or imposing a duty or a liability, where none existed before, and making no provision for the passage of laws by the Legislature to enforce same, are self-enforcing. Such was the situation in most of the cases cited by Judge HALL. For example, in Sharp v. Nation-

al Biscuit Co., 179 Mo. 553, the three-fourths jury amendment, as applicable to civil cases in courts of record, was under consideration. That provision read: "and that in the trial by jury of all civil cases in courts of record, three-fourths of the members of the jury concurring may render a verdict." Said provision clearly authorized such verdicts independent of legislative action. No provision for legislative action was made. None was needed.

Also in State ex rel. Houck v. Lesueur, 145 Mo. 322, Section 21, Article X, of the 1875 Constitution was held to be self-enforcing. It contained no provision for legislative action and, in plain and unequivocal terms, required every corporation upon organization to pay into the State Treasury certain incorporation fees. The same may be said of the constitutional provisions considered in the following cases cited by Judge HALL: Gregg v. Granby Company, 164 Mo. 616; State v. Warner, 165 Mo. 399; State v. Kyle, 166 Mo. 287; Evans v. McFarland, 186 Mo. 703.

In the case of Bandel v. Isaac, 13 Md. 202, cited by Judge HALL, the Maryland Constitution provided that not more than six per cent interest should be exacted and "the Legislature shall provide, by law, the necessary forfeitures and penalties." The provision for legislative action was directed only to the enactment of laws to provide for forfeitures and penalties, and such direction did not require legislative action to enforce the constitutional provision as a whole, as does our Section 12, Article XII.

Judge HALL's conclusion that Section 12, Article XII, is self-enforcing was summed up as follows:

"Section 12 of Article 12 of our Constitution clearly establishes an unconditional short-haul rule, without regard to direction or to circumstances and conditions. Said section declares that it *shall be unlawful* for any railroad company to charge for the transportation of freight or passengers a greater amount for a less distance than 'the amount charged for any greater distance.' That declaration establishes a rule, and creates a right in every passenger and shipper to a compliance with and an obedience to its terms. The direction to the Legislature that it pass suitable laws to enforce the rule established, contained in said section did not suspend the rule or right of passengers and shippers to a compliance with its terms, until the Legislature should comply with said direction and pass such laws. Said section has the same force and effect as if it read: 'It shall not be lawful in this State for any railroad company to *charge, under penalties which the General Assembly shall prescribe,* for freight or passengers a greater amount for the transportation of the same, for a less distance than the amount charged for any greater distance.' Had said section read that way, its effect as an operative law would

have been too clear for controversy. To my mind it is equally clear under the present reading.''

There could be no question concerning the correctness of his conclusion, were it not for the clause providing that the General Assembly shall pass suitable laws to enforce said provision, that is, Section 12, Article XII, as a whole.

Section 106, 12 Corpus Juris, 729, states as the general rule that "constitutional provisions are self-executing when there is a manifest intention that they should go into immediate effect, and no ancillary legislation is necessary to the enjoyment of a right given, or the enforcement of a duty imposed." And again in Section 107, at page 730, it is said: "Constitutional provisions are not self-executing if . . . it appears from the language used and the circumstances of its adoption that subsequent legislation was contemplated to carry it into effect."

It is clear from the language of Section 12, Article XII, itself that it was the intention of the framers of the provision that it was not to go into effect immediately. If it was their intention that it should go into immediate effect, why the proviso that the General Assembly should pass suitable laws to enforce it?

We have not found a case, except the Hall decision, wherein a constitutional provision was held to be self-enforcing where the right created, the act prohibited or the duty imposed was accompanied by a constitutional mandate that suitable laws should be passed by the Legislature to enforce the constitutional provision as a whole, which necessarily includes the created right itself, as well as adequate remedies for the enforcement thereof. We conclude, therefore, that the Hall decision improperly held that Section 12, Article XII, with its mandate to the General Assembly to pass suitable laws to enforce it, was self-enforcing or self-executing. How can it reasonably be said that in adopting said section the people intended it to be self-enforcing when the section itself, as adopted by the people, directed the Legislature to pass suitable laws to enforce it?

It is with no little hesitancy that we have ventured to reconsider the foregoing questions after the apparently masterful manner in which they were considered and decided by Judge HALL, and to disagree with the conclusions reached by him, which the divisions of this court and the court en banc itself have heretofore declared to be settled by said decision and have consistently followed. [McGrew v. Mo. Pac. Ry. Co., 258 Mo. 23; McGrew Coal Co. v. Mo. Pac. Ry. Co., 178 S. W. 1179 (two cases); McGrew Coal Co. v. Mo. Pac. Ry. Co., 280 Mo. 466.] But the conviction that his opinion is fundamentally unsound compels us, in obedience to the dictates of our consciences as judges and under the obligation of our own oaths of office, to decide for ourselves whether the 1872 Act is still in force and

to reach our own conclusions as to the proper construction to be given Section 12 of Article XII of the 1875 Constitution.

We have reached the conclusion that the 1872 Act is not now in force. We, therefore, have no valid legislative act making it unlawful for a railroad to make a charge for a short haul the same as or greater than it makes for a longer haul, regardless of direction, circumstances or condition. Section 12, Article XII, which declares it to be unlawful for a railroad company to charge for freight or passengers a greater amount for the transportation of same for a less distance than the amount charged for any greater distance, is not self-enforcing and the General Assembly has passed no suitable laws to enforce it. Said section of the Constitution therefore does not authorize the judgment rendered in this case.

The 1887 Act and the later Public Service Commission Act of 1913 are in harmony with legislative action in other states, with the construction placed upon the Federal Long and Short Haul Statute, and with the principles of rate-making recognized by expert, rate-making authorities generally. Even though the 1887 and 1913 acts might be said not to have carried out faithfully the mandate of Section 12, Article XII, of the 1875 Constitution, the charges there declared unlawful cannot avail respondent for want of suitable legislative action.

It results that the cases of McGrew v. Railroad, 230 Mo. 496, and McGrew v. Railway Co., 177 Mo. 533, and our subsequent decisions which have followed them, must be and are overruled, in so far as such cases are out of harmony with our opinion in the case at bar.

Other defenses are made in the answer of appellant which required consideration only in the event that this court should adhere to its previous ruling, as set forth in the Hall decision. In view of the conclusions reached herein, such defenses need not be considered.

The judgment is reversed. All concur.