SONKEN-GALAMBA CORPORATION, APPELLANT, v. MISSOURI PACIFIC RAILROAD CO., RESPONDENT.—40 S. W. (2d) 524.

Kansas City Court of Appeals. June 15, 1931.

*John I. Williamson, Bernard L. Glover, Byron M. Gray* and *Ayres H. Blocher* for appellant.

*Richard H. Beeson* and *Hackney & Welch* for respondent.

BOYER, C.—This is an action to recover damages in the nature of reparation for freight charges demanded and paid and said to be excessive. Defendant demurred to the petition on the ground that it failed to state facts sufficient to constitute a cause of action. The demurrer was sustained. Plaintiff refused to plead further, suffered judgment of dismissal, and duly appealed.

Suit was filed March 15, 1930. The record before us shows that the petition contained thirty-seven counts identical in nature except for dates, amounts, car numbers, weights, and points of origin and destination. All of the shipments were intrastate and from one place to another within the environs of Kansas City, Missouri.

The petition alleges the corporate character of plaintiff as well as that of defendant and that defendant was engaged in the business of "a common carrier and operating as a switching railroad within, to, from and through the corporate limits of the city of Kansas City, Jackson county, Missouri. The remainder of the first count of the petition is the following:

"Plaintiff for its first count against the defendant states that on or about the 5th day of October, 1925, it caused to be shipped 34,000 pounds of scrap iron in car number 74011 initial MP from the plant and place of business of Noll-Welty Company located on defendant's line in Kansas City, Jackson county, Missouri, to the plant and place of business of the Kansas City Bolt and Nut Company, located on defendant's line in Kansas City, Jackson county, Missouri, said shipment being handled entirely by said defendant.

"Plaintiff states that on or about October 13, 1925, it was compelled to pay to defendant as freight charges for transporting said shipment the sum of Ten Dollars, said freight charges being unjust, unreasonable and excessive in violation of the provisions of sections 9980 and 9988 of the Revised Statutes of Missouri of 1919; that just and reasonable freight charges for transporting said shipment were and would have been four and 95/100 dollars whereby plaintiff has been damaged in the sum of five and 05/100 dollars, which defendant ought to return to plaintiff.

"Wherefore plaintiff prays for judgment against the defendant on this count for five and 05/100 dollars, interest thereon at six per cent per annum from October 13, 1925, plus reasonable attorneys' fees, together with costs of this action."

At the conclusion of the petition is a general prayer for judgment on all counts in a stated sum together with interest and attorneys' fees and for an additional sum as treble damages. The judgment

does not recite any reason for the ruling of the court, but merely recites that the demurrer is sustained, to which action plaintiff excepts; that plaintiff is given time to plead; that it refuses to plead further, and it is ordered that the cause be dismissed.

Section 9980, Revised Statutes 1919, among other things, declares railways to be public highways and all persons operating them to be common carriers, and proceeds:

"All charges made for any service rendered in the transportation of freight on such railways . . . shall be reasonable and just; and all unreasonable and unjust charges for such service are prohibited and declared unlawful."

Section 9988, Revised Statutes 1919, provides in part:

"Every such common carrier shall print and keep for public inspection schedules showing the rates for freight which such carrier has established and which are in force at the time upon the railroad or railroads operated by it as defined in section 9980. Said rates shall be reasonable and just, and shall not in any case exceed the maximum rates which are or which may hereafter be established by law."

Said section also provides that said schedules shall be filed with the "railroad commissioners." Both sections above quoted are retained from previous revisions and had their origin in "An Act to regulate railroad corporations" in Laws of 1887, Extra Session, page 20.

Section 9991, Revised Statutes 1919, now section 4802, Revised Statutes 1929, on which plaintiff relies for a statutory remedy on account of its alleged damages is in these words:

"Any person or persons claiming to be damaged by any common carrier by reason of any violation of the provisions of sections 9980 to 9994 inclusive, may bring suit therefor in any circuit court of any county or city into or through which the line operated by such common carrier enters or passes, and such person or persons may make complaint as hereinafter provided to the railroad commissioners. And if any proceeding is commenced under the provisions of said sections, either in a court or before the said railroad commissioners, the tribunal before which such proceeding shall be pending may compel any director, officer, receiver, trustee, agent or employee of the common carrier complained of in such suit to attend as a witness and testify in such proceeding, and may also compel the production of the necessary books, papers and documents of such common carriers. [R. S. 1909, sec. 3192.]".

This section is likewise carried forward from Laws of 1887, which accounts for the reference made to "railroad commissioners."

Does the petition state any cause of action within the jurisdiction of the circuit court? The question to be determined is thus briefly stated and gathered from the rather extensive briefs of

the contending parties. To summarize the contention of the parties here, it is appellant's contention that it is unlawful to charge unjust rates and that a person required to pay same is permitted to bring his suit in the circuit court for the damage thus sustained; that the Constitution of Missouri, section 10, article II, provides that the courts shall be open to every person and certain remedies afforded for every injury; that section 4802, Revised Statutes 1929, specifically provides that the circuit court has jurisdiction of this case; that the Public Service Commission has no power to hear or to grant a claim for reparation for an unjust charge already paid, and that its power is limited to fix rates for future application and to "determine the just and reasonable rates, fares and charges to be thereafter observed."

Respondent contends that sections 9980 and 9988, Revised Statutes 1919, now sections 4791 and 4799, Revised Statutes 1929, have been repealed by the enactment of the Public Service Commission Law of 1913, and "swept into the discard" by decisions of the Supreme Court; and that since the passage of said Act of 1913, the circuit court has no authority whatever to deal with either past or future rates nor to entertain suits based on the claim of an unreasonable rate which had not been declared to be such by the Public Service Commission, unless the petition allege the exaction and collection of a rate contrary to the published tariffs or the wrongful exaction of a rate previously determined by the Public Service Commission to be unreasonable.

Appellant insists that the case of State ex rel. Railroad v. Public Service Commission, 303 Mo. 212, 259 S. W. 445, is applicable and controlling; and respondent contends that the ruling in the case of McGrew Coal Co. v. Mellon, 315 Mo. 798, 287 S. W. 450, is conclusive in support of its position. These cases will be referred to later.

In the first place we observe that the declarations of sections 9980 and 9988, Revised Statutes 1919, in reference to just rates, are in substance contained in section 27 of the Public Service Commission Act, Laws 1913, page 570, now section 5147, Revised Statutes 1929. The last named section contains this language:

"All charges made or demanded by any such corporation, person or common carrier . . . shall be just and reasonable and not more than allowed by law or by order or decision of the commission and made as authorized by this chapter. Every unjust or unreasonable charge made or demanded for any such service or transportation of passengers or property or in connection therewith or in excess of that allowed by law or by order or decision of the commission is prohibited."

It is therefore observed that the substance of sections 9980 and 9988, Revised Statutes 1919, were not swept aside by the Public Service Commission Law of 1913, but were retained therein.

Section 5149, Revised Statutes 1929, provides in part:

"Every common carrier shall file with the commission and shall print and keep open to public inspection schedules showing the rates, fares and charges for the transportation of passengers and property within this State between each point upon its route and all other points thereon."

It is further provided that the form of such schedule shall be prescribed by the commission and shall conform, in the case of railroad corporations, as nearly as may be to the form of schedule required by the Interstate Commerce Commission, and that the commission shall have power from time to time in its discretion to determine and prescribe by order such changes in the form of such schedule as may be found expedient.

Section 5151, Revised Statutes 1929, provides that no change shall be made in any rate which shall have been filed and published except upon the conditions therein provided. Section 5155, Revised Statutes 1929, provides that no common carrier shall engage in the transportation of property until its schedules of rates shall have been filed and published, and further provides:

"No common carrier shall charge, demand, collect or receive a greater or less or different compensation for transportation of passengers or property or for any service in connection therewith, than the rates, fares and charges applicable to such transportation as specified in its schedules filed and in effect at the time."

The powers of the commission to fix and alter rates of common carriers and the method of procedure are fully set forth in section 5167, Revised Statutes 1929, and the commission shall fix the same by order "thereafter to be observed."

In the case of State ex rel. Railroad v. Public Service Commission, 303 Mo. 212, 259 S. W. 445, a shipper filed complaint against the railroad before the Public Service Commission alleging that rates charged on past shipments were excessive and requested a hearing and an order commanding the railroad to refund the excess charge by way of reparation. The commission assumed jurisdiction, tried the case, found for the plaintiff, and by order directed the railroad company to pay plaintiff a specified sum as damages by reason of charging and collecting an unlawful rate. The action of the Public Service Commission was affirmed by the circuit court and upon appeal the Supreme Court held that the commission had no jurisdiction. In the course of the opinion, 303 Mo. 1. c. 218 et seq., are the following expressions:

"To determine whether one person is entitled to recover money from another by way of damages cannot be anything but a judicial question, and as such must be determined by the courts. The Public Service Commission is not, and under our Constitution cannot be, a court. . . . The lawmakers could not make it a

judicial body, and confer upon it judicial functions. . . . If the Legislature undertook to empower the Public Service Commission to hear and determine a lawsuit, its act would be void. Such is a judicial function, and must be asigned to the judiciary under our State government. . . . The claim involved in this case is a pure claim for damages. It had no place before the Public Service Commission. . . . A statute authorizing such a body to make a finding in a case like this, whether the finding was to be final, or merely prima-facie evidence, is void. . . . We further rule that the subject-matter of the claim involved here was purely judicial, and as such had no place before the Public Service Commission.''

The above authority is cited and relied upon by plaintiff with a view of sustaining its contention that it could obtain no relief before the Public Service Commission on account of unjust charges paid by it; that said charges were unlawfully obtained from plaintiff on account of which it had a right of recovery both at common law and under section 4802, Revised Statutes 1929, and that the only forum to which it could resort for relief was the circuit court.

A prime question involved in the case at bar pertains to the right of plaintiff under section 4802, Revised Statutes 1929, and whether it and plaintiff's right at common law can be applied to the state of facts set up in the petition. Respondent urges that the sections of the statute which the petition states were violated, and inferentially section 4802, were expunged by the Public Service Commission Law of 1913, which conferred plenary powers upon the commission to fix rates, and that no provision was made for reparation on account of past charges. Respondent's position is that inasmuch as a tariff schedule was filed that it became and was the lawful rate which the railroad company was compelled to collect, and that appellant's remedy, and the only one provided, was by way of application to the Public Service Commission to fix a reasonable rate, and having failed to make such application it should not be permitted long after it voluntarily paid the tariff charge to prosecute a common-law action asking the circuit court to determine whether the published tariff rate was legal. Respondent contends that the case of McGrew Coal Co. v. Mellon, 315 Mo. 798, 287 S. W. 450, has determined the issue in the case at bar and is conclusive against appellant in that it is there ruled that the statutes relied upon by appellant are no longer in force and effect. In the case cited the action was to recover alleged excessive freight charges said to be in violation of the long-and-short haul provision of the statute then in force. One of the defenses was that section 12, article XII of the Constitution of 1875, was not self-enforcing and that the general assembly had not passed suit-

able laws to enforce said provision. The matter to be determined was whether the court would adhere to its previous rulings that the section of the Constitution referred to was self-enforcing and whether the Act of 1872 was still in force. It was held the Act of 1872 was repealed by implication by the Act of 1887, stating the reasons therefor, and then follows the paragraph upon which respondent particularly relies and shown on page 807 of the opinion. It reads:

"However, if the foregoing considerations may fairly be said to leave any doubt that the 1872 Act is no longer in force, what doubt can possibly remain since the passage in 1913 of the Public Service Commission Act? Section 47, Laws of 1913, page 583 (now sec. 10456, R. S. 1919), provides in substance that when the commission shall be of the opinion after a hearing that the rates, fares or charges demanded, exacted, charged or collected by any railroad for the transportation of persons or property in this State are, among other things "unjustly discriminatory," the commission shall determine the just and reasonable rates, fares and charges to be thereafter observed and in force. No logical conclusion can be reached, other than that it was the intention of the Forty-seventh General Assembly thereafter to leave to the commission the entire subject and field of rate regulation, including unjust discrimination and other abuses, without the commission being in anywise bound by previous legislative enactments upon the subject which had not been expressly repealed. If this is the correct view, and we doubt not that it is, then the 1872 Act, even though not repealed by implication by the 1887 Act, and the 1887 Act as well, were swept into the discard and were repealed by necessary implication by the enactment of the Public Service Commission Act."

If the 1887 Act was repealed "and swept into the discard" by the Public Service Commission Act of 1913, then section 4802, Revised Statutes 1929, is a dead letter and merely a memory because it is the same as section 11 of the 1887 Act found in the Laws of the extra session of that year at page 20.

Appellant contends that what is said in the McGrew case, supra, in reference to the repeal of the 1887 Act was *obiter dictum* and unnecessary in a decision of the case. As we read it, it is an affirmative reason for the holding of the court and the language used is all-inclusive, not only in reference to unjust discriminations, but also in reference to "other abuses" which would necessarily include the abuse incident to an excessive charge. We can not interpret this language otherwise than to mean that all provisions of the 1887 Act have been repealed.

Responsive to the decision in the McGrew case, which was made October 8, 1926, the next Legislature repealed section 9986, Revised Statutes 1919, and enacted in lieu thereof a new section relating

to discrimination in long and short hauls by common carriers. Sections 9980, 9988, and 9991, Revised Statutes 1919, retained therein from previous revisions antedating the Act of 1913, did not receive similar legislative attention and have been retained in the revision of 1929 as sections 4791, 4799, and 4802. This may evidence a legislative intention to recognize section 4802, Revised Statutes 1929, as an existing law and that the right of action therein provided should be preserved. However, if the literal meaning of the language used in the McGrew case of 1926 be accepted as a declaration of the court applicable to the state of facts in the case at bar, then said section no longer exists. And if it be conceded that the effect of the ruling in the McGrew case is that all sections now in the statute which were previously in the 1887 Act have been repealed, yet it does not necessarily follow that because the statute makes no provision for reparation on account of past charges a shipper is thereby deprived of any cause of action whatever under any and all circumstances for his damages on account of excessive rate charges. According to the ancient conception that the law affords a remedy for every wrong, and the express injunction of section 10, article II of the Constitution of Missouri that "the courts of justice shall be open to every person," it would clearly appear that a shipper subjected to an unlawful charge would be entitled to a remedy by action at common law, and that his natural and only resort would be by suit in the circuit court. Even though it be conceded that section 4802, Revised Statutes 1929, is expunged, yet the doors of the courts are not closed merely because of the absence of a statute which says a suitor may enter, nor even in the presence of a statute saying that he may not enter. A statute denying access to the circuit court under such circumstances would have no validity. [Section 22, article VI, Constitution of Missouri; Dorrance v. Dorrance, 257 Mo. 317, 325.]

The Public Service Commission law was never intended to restrict the right of redress where none was expressly afforded by its terms. This view is strengthened by its provisions that all rates shall be just and reasonable, and further by the legislative intent manifested in the repealing clause of the Act of 1913, now section 5263, Revised Statutes 1929, which says: "The provisions of this law are not intended to repeal any law now in force, unless in direct conflict therewith, but is intended to be supplemental to such laws." The holding in the case of State ex rel. Railroad v. Public Service Commission, supra, remits a claimant for damages to the courts and by implication at least holds that a shipper who has been subjected to an illegal charge may there seek his remedy.

All of the foregoing is more properly referable to a clarification of the contentions and positions of the respective parties. The larger part of what has been said has little or no bearing on the

question which we have to decide, that question being merely one of pleading and the necessary averments of a petition calling for the relief which plaintiff demands. Whether plaintiff's petition is sufficient must be determined in view of the effect of the Public Service Commission Act. It is our view that the commission created by it was invested with full power and was given complete dominion in the field of rate making and rate regulation, subject only to the supervision and review of its decisions which the law prescribes. The right to redress in court must be confined to such wrongs as can be redressed without previous action by the commission, and in a manner consistent with the context of the statute. The act provides that a schedule of rates shall be filed and that a carrier shall be subject to the payment of penalties if it attempts to operate without so doing. For all that is said in the petition, the presumption must be indulged that defendant obeyed the law and filed and published its rates as the law directs. Further, appellant makes a statement and admission in one of its briefs that defendant charged the rates that were on file with the commission, "but such rates were of the respondent's own making, and never had been approved by the Public Service Commission." And appellant further says: "It is not contended that the rates on file with the Public Service Commission are not the rates that must legally be assessed." Public utility or carrier rates when once filed and published become for the time the lawful rates and remain so until set aside or altered by order of the commission; and a carrier cannot of its own volition legally accept less than the published rate. [Marty v. Light & Power Co., 303 Mo. 233, 242, 246; Mellon v. Stockton & Lampkin (Mo. Sup.), 30 S. W. (2d) 974.] The act does not require approval by the commission of rates filed and published before they become legal rates, but said rates may upon motion of the commission or upon complaint be suspended and the reasonableness thereof ascertained. Plaintiff's admission here that rates were filed and published should be treated as a judicial admisison of fact pertinent to the sufficiency of its petition. It has been held that in a suit for trespass under an ordinance, an admission of plaintiff's counsel was tantamount to a verbal amendment of the petition which would then state no cause of action. [St. Louis v. Babcock, 156 Mo. 154, 157.] Trial courts are authorized to act upon the admissions of counsel. [State v. Levy, 262 Mo. 1. c. 191; State v. Ray, 225 S. W. 969, 974; Wood v. Wells (Mo. Sup.), 270 S. W. 332, 334; Hampe v. Versen, 32 S. W. (2d) 793, 797.]

Proceeding then upon the assumption that rates were filed, plaintiff's cause of action is committed to the theory that courts and juries in every judicial circuit in the State may determine whether rates so filed and charged were reasonable and, if found to be

unreasonable, award reparation. Such theory is wholly incompatible with the obvious intent and purpose of the Public Service Commission Act and would render its provisions nugatory, and the commission impotent as the primary rate inquiring and rate fixing body. The law provides the commission with the means and with the agencies of acquiring the information requisite to a proper determination of such questions. The act contemplates that a rate named in the schedule and published is the lawful rate until legally altered and that all proceedings for the determination of just and reasonable rates shall be initiated before the commission and first disposed of by it. The courts may then determine whether the commission has proceeded properly and reached correct legal conclusions. There would be no assurance of uniformity in the verdicts of juries as the Legislature well understood. The procedure of jury making would inevitably result in discrimination and rebates which are expressly prohibited; and likewise, collusive proceedings could effect the same result.

Some pertinent decisions and declarations of law are here noted. The Legislature may delegate authority to determine just and reasonable rates of public utilities, and the Public Service Commission acts under such authority and is authorized to raise rates above prior statutory maximums. [State ex rel. v. Public Service Commission, 259 Mo. 704, 168 S. W. 1156; Kansas City v. Public Service Commission, 276 Mo. 539, 210 S. W. 381, 6 Mo. P. S. C. 67.] Any prior statute empowering a city to fix a schedule of rates is necessarily abrogated by this law. [State ex rel. v. Public Service Commission, 270 Mo. 429; State ex rel. v. Public Service Commission, 270 Mo. 547, 194 S. W. 287.] The power to supervise rates, fares, and charges exacted by a street railway rests exclusively with the Public Service Commission. [Ex parte Packman, 317 Mo. 732, 296 S. W. 366.] Power over the rates of a common carrier is committed to the commission. [State ex rel. v. Public Service Commission, 321 Mo. 297, 10 S. W. (2d) 946.] The Commisison has power to suspend any new rate, fare, charge or classification on its own motion or upon complaint and to enter upon a hearing. [Section 10457, R. S. 1919; section 5169, R. S. 1929.] Rates fixed by franchise ordinances are not binding upon the Public Service Commission and it is not precluded thereby from taking cognizance of the company's application for increase in rates. [State ex rel. v. Latshaw, 30 S. W. (2d) 105, 108, 109.]

Plaintiff argues that the commission has no power to grant reparation and if required to apply to the commission to alter an unjust rate it would suffer irreparable injury on account of delay if this action cannot be sustained. We deem this primarily a criticism of the legislative wisdom of the Public Service Commission Act. The forum for relief against an unjust or inadequate

legislative measure is the forum of its origin. The courts are limited to questions of validity, interpretation, and application. Hence the wisdom of a legislative measure is not a justiciable question either in the trial or appellate court.

The petition in the case at bar merely alleges an unjust overcharge. If we add to that the admission that a schedule of rates was filed it would unquestionably follow that, in the absence of a further averment that the rates charged were in excess of the published tariff or in excess of a rate determined to be reasonable by the commission, it states no cause of action. It is obvious that in order to recover plaintiff would be required to prove that the amount paid by it was in excess of the published tariff or in excess of a rate determined to be just by the commission, and in so doing would be proving more than the petition alleges. The essential and constituent facts of a cause of action must be alleged. In an almost similar case the Supreme Court of Georgia held as we here rule. [Sorrell & Nall v. The Central Railroad, 75 Ga. 509.]

In view of the meager contents of plaintiff's petition and its theory of the case we are clearly of the opinion and hold that the petition is insufficient to state any cause of action and that the demurrer was properly sustained. The judgment should be affirmed. The Commissioner so recommends. *Campbell, C.,* concurs.

PER CURIAM:—The foregoing opinion of Boyer, C., is adopted as the opinion of the court. The judgment is affirmed. All concur, except *Trimble, P. J.,* absent.